SILAS CONDIT and JAMES VANDERPOOL v. WILLIAM NEIGHBOR.

Rent is an incident to the reversion, and follows it, whithersoever and into whatsoever hands it may pass, unless they are severed by the act of their owner, or by the operation of the law, and then each may become vested in a different person.

Where a lease was made to J. B. and Sarah his wife, and to each of them, their heirs and assigns, and the said Sarah survived her husband, and afterwards married John Scott, who survived the said Sarah, the rents which accrued under the lease, after the decease of John Scott, do not belong to his representatives.

A demurrer is well taken, if the claim of the plaintiffs, as exhibited in the declaration, is more comprehensive than their right. Where the demand exceeds the right, but the fact of excess does not appear by the declaration, there can be no demurrer on this account. But where it is apparent, that the plaintiff claims or demands more than his right, there may be a demurrer, although some portion of the claim, as made, is rightful ; for in such a case, the rule of good sense as well as of good pleading is brought into action, that the defendant shall not be compelled to answer or defend for that, to which the plaintiff has no lawful right.

The construction of the act entitled " an act to enable William S. Pennington of the county of Essex, to carry into effect, a trust therein named," passed 27th of November, 1823.

———

Silas Condit and James Vanderpool declared against William Neighbor " for that, whereas heretofore, to wit :—on the thirteenth day of April, in the year of our Lord seventeen hundred and forty-seven, at Roxbury, in the county aforesaid, by a certain deed, then and there made, by and between one John Budd and Sarah his wife, and one Jacob Bodine, the counterpart of which said deed, sealed with the seal of the said Jacob Bodine, the said Silas and James now bring into court, the date whereof is the day and year aforesaid ; they the said John Budd and Sarah his wife, and each of them, for and in consideration of certain rents mentioned and reserved in the said lease, did lease and to farm let, unto the said Jacob Bodine, a certain piece or parcel of land, with the appurtenances (except as in the said lease is excepted) particularly mentioned and described in the said lease, situate in the township of Roxbury in the county of Morris aforesaid, at the lower end of the Long Valley, to have and to hold the said land and

Condit *v.* Neighbor.

premises, with the appurtenances, (except as aforesaid) unto the said Jacob Bodine, his heirs and assigns, from the first day of November then last part, to the only use and behoof of him the said Jacob Bodine, his heirs and assigns, for and during the term of ninety-seven years fully to be complete and ended; And the said Jacob Bodine did thereby, for himself, his executors, administrators and assigns, covenant and agree, to and with the said John Budd and Sarah his wife, and each of them, their heirs and assigns, that he the said Jacob Bodine, his executors, administrators or assigns, would pay or cause to be paid unto the said John Budd and Sarah his wife and each of them, their heirs or assigns, three Spanish Pistoles and a half Pistole of full weight, and four shillings and seven pence current money of America, which said sums are equal to, and of the value of thirteen dollars and ten cents of lawful money of the United States of America, on or before the first day of November next ensuing the date of the said deed, and thereafter yearly and every year, on or before the first day of November, during the said term of the said demise, as by the said deed, reference being thereunto had, will, among other things more fully and at large appear.   By virtue of which said demise, the said Jacob Bodine afterwards, to wit, on the said thirteenth day of April, in the year of our Lord one thousand seven hundred and forty-seven, entered into and upon all and singular the said demised premises, and became and was thereof possessed for the said term so to him thereof granted as aforesaid.   And the said Silas and James, in fact, further say, that after the making of the said deed, and during the said term, thereby granted and demised as aforesaid, to wit, on the first day of March, in the year of our Lord one thousand eight hundred and thirteen, at Roxbury aforesaid, all the estate, right, title, interest, term of years then to come and unexpired, property, profit, claim and demand, whatsoever, of him the said Jacob Bodine, of, in and to the said demised premises, with the appurtenances, by assignment thereof, then and there made, legally came to and vested in the said William Neighbor.

And the said Silas and James, in fact, further say, that the said John Budd, being seized of the reversion of the said demised premises, with the appurtenances, in fee simple, did on

the sixth day of September, in the year of our Lord seventeen hundred and forty-nine, make his last will and testament, in writing, by him duly executed and attested to pass real estate, and thereby gave and devised the said reversion of the said premises, with the appurtenances, to the said Sarah Budd in fee, and afterwards, to wit, on the first day of October, in the year of our Lord seventeen hundred and forty-nine, the said John Budd departed this life, to wit, at Roxbury aforesaid, without revoking or altering said last will and testament, and seized of the reversion of and in the said demised premises, with the appurtenances; and that the said Sarah afterwards, to wit, on the first day of November, in the year of our Lord seventeen hundred and fifty-five, intermarried with one John Scott; and afterwards, to wit, on the first day of November, seventeen hundred and seventy-five, departed this life, to wit, at Roxbury aforesaid; and the said John Scott, afterwards, to wit, on the first day of October, in the year of our Lord eighteen hundred, departed this life, to wit, at Roxbury aforesaid.

And the said Silas and James, in fact, further say, that heretofore, to wit, on the twenty-seventh day of November, in the year of our Lord eighteen hundred and twenty-three, at Trenton, to wit, at Roxbury aforesaid, by a certain act of the legislature of the State of New-Jersey, entitled " An act to enable William S. Pennington of the county of Essex, to carry into effect, a trust therein named," after reciting that " Whereas it is represented to the legislature, that John Budd and Sarah his wife, afterwards wife of John Scott, all of the county of Morris, now deceased, during their lives were seized in fee of a tract of land in the county of Morris, containing sixteen hundred and eighty acres, or thereabouts, be the same more or less, known by the name of the Budd or Long Valley Tract, but at this time by the name of the Dutch Valley Tract; which tract of land, by divers descents, devises and conveyances, became vested in fee in the heirs and descendants of the said John Budd and Sarah Scott, or one or both of them; which heirs and descendants, by articles of agreement, bearing date the twenty-ninth day of July, eighteen hundred and seventeen, agreed to convey all their rights and titles, in and to the said tract of land, to William S. Pennington of the county of Essex, by the

name of William S. Pennington, esq. in trust to dispose of the same for their mutual benefit, according to the proportions and provisions set forth and contained in the said agreement, reference being thereunto had, will more fully and at large appear; And whereas, it is further represented to the legislature, that in pursuance of said agreement, the said heirs and descendants of the said John Budd and Sarah Scott, deceased, as far as it is in their power to do the same, have conveyed to the said William S. Pennington, their respective rights, titles and interests, in and to the said tract of land; And, whereas, by reason of the numerous heirs and descendants, of the said John and Sarah being dispersed in divers parts of the United States and elsewhere, who derive their title from several distinct branches of the family, doubts exist as to the right of the said William S. Pennington and his power to sell and dispose of said land so as to make a complete title to purchasers thereof, whereby the said William S. Pennington hath not been able to execute the trust reposed in him; for remedy whereof, and to enable the said William S. Pennington to carry into effect the said trust, for the best advantage of all parties interested therein," it was, among other things, enacted, " That all the right, title, interest, property, claim and demand of the heirs and descendants of the said John Budd and Sarah Scott, formerly the wife of the said John Budd, or of either of them, and of those claiming under the said heirs and descendants, or either of them, in and to the said tract of land lying and being in the county of Morris, formerly known by the name of the Budd or the Dutch Valley Tract, supposed to contain one thousand six hundred and eighty acres as aforesaid, be the same more or less, together with the remainder or remainders, reversion or reversions, rents, issues and profits thereof, should be and the same was and were, thereby vested in the said William S. Pennington, of the county of Essex, his heirs and assigns, in trust, nevertheless, and the said William S. Pennington is hereby authorized and impowered to sell and convey the said premises, and if necessary to demand and sue for the same, and the rents, issues and profits thereof, in his own name, and as though the said William S. Pennington was entitled to the same in fee simple; and to apply and dispose of the moneys arising on said

Condit *v.* Neighbor.

sales, and the rents, issues and profits of the said premises, according to the directions and provisions contained in the herein before recited agreement; and also, according to the further direction hereinafter expressed." And in and by the third section of the said act, it was further enacted " that nothing therein should in any way affect, defeat or impair the right, title, interest, property or demand, of any person or persons, whatever, in law or equity, to said tract of land, or any part thereof, or to the rents, issues and profits thereof, claiming the same, by, from, or under any person or persons, other than the heirs and descendants of the said John Budd and Sarah Scott, as aforesaid ; or by any paramount title whatever; nor should any thing in said act be construed to deprive any person or persons in possession of said tract of land, and claiming as owners, tenants, occupiers or otherwise, from any defence which he, they, or any of them, may have by reason of length of time or limitation of suit against the said heirs and descendants of the said John Budd and Sarah Scott as aforesaid, to any action brought by said William S. Pennington, for the said tract or the rents, issues and profits thereof,"—as by the record thereof, may more fully and at large appear.

And the said Silas and James, in fact, further say, that heretofore, to wit, on the      day of      in the year of our Lord eighteen hundred and      at Trenton, to wit, at Roxbury aforesaid, by a certain other act of the legislature of the State of New-Jersey, entitled " a supplement to an act, entitled, An act to enable William S. Pennington of the county of Essex, to carry into effect a trust therein named, passed on the twenty-seventh day of November, one thousand eight hundred and twenty-three, after reciting, that " Whereas it is represented to the legislature, that since the passing of the act to which this is a supplement, William S. Pennington, esquire, the trustee therein named, hath departed this life ; and that by reason of many difficulties which intervened, he was unable to execute the said trust in his life time, and died, leaving the same unperformed, whereby the said trust, and all the estate, right and title of the said William S. Pennington, in the trust estate, descended to his heirs at law, some of whom are infants, under the age of twenty-one years, and those who are adults are un-

willing to take upon themselves the burthen of the said trust, and are desirous that some other persons should be appointed in their place and stead; and, whereas, a majority of the heirs at law and descendants of John Budd and Sarah Scott, deceased, who are the persons for whom the said William S. Pennington was trustee, as mentioned in the said act, are desirous that Silas Condit and James Vanderpool of the county of Essex, should be substituted in the place of the heirs at law of the said William S. Pennington, and be authorized to perform the trusts so as aforesaid remaining unperformed at the time of the death of the said trustee; and the said Silas Condit and James Vanderpool, having consented to accept of the said trustship," it was, among other things, enacted, That Silas Condit and James Vanderpool of the county of Essex, and the survivor of them, should be and they were thereby constituted and appointed trustees to execute the trust in the said act mentioned, and to do and perform all such acts which might have been done by the said William S. Pennington, in the premises, in virtue of the said act, to which this is a supplement, or in virtue of the article of agreement and conveyance by and between the heirs and descendants of John Budd and Sarah Scott, deceased, recited in the said act, subject, nevertheless, to the provisions, conditions and restrictions of the third section of the said act; and that all the right, title, estate and interest of the said William S. Pennington, of, in and to the premises in the said act mentioned, and of his heirs at law in the same, should be, and the same were thereby vested in the said Silas Condit and James Vanderpool and the survivor of them, in as full and ample a manner as the same were vested in the said William S. Pennington, in his life time, to the same uses, trusts and purposes, as are set forth in the said acts, as by the record thereof may more fully and at large appear.

And the said Silas and James, in fact, further say, that the demised premises, with their appurtenances, above mentioned, are a part and parcel of the said tract of land, called the Budd or Long Valley Tract, in the said acts mentioned and referred to, and that by reason and virtue of the acts of the legislature of New-Jersey above mentioned, they the said Silas and James, were possessed of the reversion in fee simple, of the said prem-

Condit *v.* Neighbor.

ises, with their appurtenances, demised as aforesaid, to the said Jacob Bodine, and of the said rent; And the said Silas and James say, that although the rent aforesaid accruing under the said demise was duly paid to the said John Budd and Sarah, his wife, during the life time of the said John Budd, and although the said rent has been since for a long time duly paid, yet that afterwards, and during the said term, and after the assignment thereof to the said William Neighbor, to wit, on the first day of November in the year of our Lord, eighteen hundred and twenty-nine, a large sum of money, to wit, the sum of two hundred and nine dollars and sixty cents, of the rent aforesaid, for sixteen years of the said term then elapsed, became and was, and still is in arrear and unpaid, contrary to the tenor and effect and the true intent and meaning of the said deed of lease, and of the said covenant therein contained; and so the said William Neighbor, assignee as aforesaid, although often required, hath not kept the said covenant between the said Jacob Bodine and his assigns, and the said John Budd and Sarah, his wife, and their assigns, but hath broken the same and to keep the same with the said Silas and James, assignees as aforesaid, hath hitherto altogether refused and yet refuses, to their damage of two thousand dollars, and thereupon they bring suit, &c.

To this declaration the defendant filed a special demurrer, setting forth the causes hereafter mentioned.

Upon the argument at the last term,

*Vanarsdale* and the *Attorney-General* for the defendant, insisted,

1. That from the facts set forth in the declaration, the rents demanded by the plaintiffs do not belong to them, but to the legal representatives of John Scott. The plaintiffs claim under a private act of the legislature, vesting in them the rights of John Budd and Sarah, his wife. But Sarah, the wife of John Budd, survived him, and afterwards married John Scott, to whom, as her husband, and survivor, the lease and the rents incident to it, belonged solely and absolutely. In support of this ground of demurrer, they cited, 1 *Bac. abr. tit. Baron & Feme*, C. 2; 2 *Bl. Com.* 441; *Co. Lit.* 300, 351; 2 *Kent's Com.* 113; 1 *T. R.* 93; 1 *Ventr.* 176; 3 *Cruise*, 518, 519, 533; 2 *Mass.*

146; 4 *Mass.* 473; 2 *John.* 63; 8 *John.* 388, 554; 2 *Stephens on plead.* 215; 3 *Meriv.* 503 ; 5 *Com. dig. tit. plead.* 2, 6; 4 *Kent Com.* 351 ; *Co. Lit.* 143. *a. ibid.* 151.

2. The declaration is vicious in claiming rents, which accrued prior to the passage, in the year 1823, of the private act of the legislature, transferring in trust the rights of the heirs of Budd and wife. Like any other assignees the plaintiffs cannot sue for, or recover rents, prior to the assignment. *Bradby on Distresses*, 52; *Cro. Eliz.* 863 ; *Salk.* 199.

*Wood* and *Frelinghuysen*, for the plaintiffs,

1. The rents were incident to the reversion, and went with it to the heirs of Sarah Scott, and not to the representatives of John Scott, who could have been entitled at the most, only during his life time, as tenant by the curtesy. 7 *Term. Rep.* 478.

2. By the true construction of the act of 1823, the land and the rents, which had accrued, as well as the future rents, passed to the trustee therein named, and by force of the subsequent act, to the plaintiffs. 3 *Bos. & Puller*, 565 ; 2 *John. cases*, 17.

3. If the plaintiffs are entitled to recover only the rents since 1823, the declaration being so far good, the demurrer should be overruled and the plaintiffs allowed to recover those rents.

The COURT, after hearing very full and elaborate arguments from the counsel on these points, took time to advise, until the present term, when the opinion, of the court (FORD, J. not sitting in the cause) was delivered by the Chief Justice.

EWING, C. J. The plaintiffs in this action, seek to recover the annual rents for sixteen years reserved in a lease of certain lands in the county of Morris.

The defendant has demurred to the declaration and insists, 1st, that the plaintiffs are not entitled to recover, because from the facts set forth in the declaration, the rents in question belong not to them but to other persons ; and 2d, that if any of the rents have accrued to the plaintiffs, they are the rents for a part only and not for the whole of the period demanded.

On the 13th day of April, A. D. 1747, John Budd and Sarah, his wife, being seized in fee simple of a tract of land in the township of Roxbury in the county of Morris, by deed demised the same for a term of ninety-seven years, at a certain annual rent, to Jacob Bodine, his heirs and assigns, who covenanted

for the payment of the rent during the term " unto the said John Budd and Sarah, his wife, and each of them, their heirs and assigns." Bodine entered and was possessed, and afterwards all his estate, right and interest in the demised premises became by assignment, legally vested in the present defendant. John Budd, by his will, devised the reversion of the premises to his wife, the said Sarah, and died on the 1st of October 1749. Sarah intermarried with John Scott in November 1755. She died in 1775. Scott survived her and died in 1800. The declaration avers that the rent was duly paid to Budd and wife, during the life time of Budd ; and that " the said rent has been since for a long time duly paid," but it contains no averment more specific in respect to the person or persons to whom the subsequent rent was paid. The plaintiffs claim under the heirs and descendants of John Budd and Sarah Scott. The defendant insists that by virtue of the marriage and the survivorship of the husband, John Scott, his representatives and not the plaintiffs, are entitled to the arrearages of rent which accrued during the period of sixteen years next before the commencement of this action and which are now the subject of controversy.

The doctrine of the defendant's counsel, that the reversion and the rent are separable, and that each may become vested in a different person, is satisfactorily sustained by the authorities. The same authorities, however, shew that the rent is an incident to the reversion, or in other words, belongs or appertains to it, and follows it whithersoever and into whatsoever hands it may pass, unless they are severed by the act of their owner or by the operation of the law. *Co. Lit.* 143, *a,* 151, *b ;* 4 *Kent Com.* 351 ; *Shep. Touch.* 78 ; 19 *Viner tit. reversion,* E. *pl.* 9.

In the present case it is manifest that the reversion and the rent were united from the commencement of the term until the decease of John Budd. Whether after his death, his widow held the reversion by survivorship or under the devise, does not distinctly appear, nor is it material to enquire, since whichsoever way the truth lies, it is equally manifest that the reversion and the rent were united in her and underwent no separation until the marriage. What then was the consequence of the marriage and of the subsequent events ? John Scott, the husband, as both sides agree, became entitled to the reversionary

estate for the joint lives of himself and wife, and farther, as he survived, for the rest of his own life, as tenant by the curtesy, if they had issue, which fact, however, is not either stated or denied in terms by the declaration. But were the rent and the reversion severed by the marriage and the survivorship? Was the right to the rent absolutely vested in the husband for the residue of the term in the lease and at his decease transmitted to his representatives, so that the rent for the years now in question has accrued to them? Or did the rent follow the reversion and Scott become entitled during their joint lives, or as tenant by curtesy, and at his decease, the heirs of John Budd or Sarah Scott, on whom the reversion descended and who are as already remarked, represented by the plaintiffs? The affirmative of the former question is maintained by the defendant; of the latter, by the plaintiffs.

The general rule as already stated is, that the rent as an incident, follows the reversion. *Accessorium sequitur suum principale.* It is incumbent then on the defendant to shew that the marriage forms an exception to this rule or varies the operation of it. To do so, he cites the general doctrine from *Bacon* and *Blackstone*, that the marriage is a gift to the husband of the chattels real of the wife. The gift, however, is but a qualified one, because if she survives, the chattels real, not disposed of by the husband, belong to her. But is the general doctrine specifically applied to the case of rent accruing subsequent to the termination of the interest of the husband in the reversion? We have not been furnished, from either side, with an authority expressly in point on this enquiry.

*Clancy*, in his recent treatise on husband and wife, says, "Arrears of rent are chattels real of a mixed nature, being partly in possession and partly in action, and if the husband survive his wife, he and not her representatives shall have all those arrears *which became due* during the marriage in her right, by survivorship; and if she survive her husband, she shall have them and not the executors of the husband. And if the husband survive the wife, he shall have not only the arrears of rent incurred during the marriage, but those which were due before it." *Clancy* 10. The right of the husband is here limited to the rents accruing during and before the marriage. Nor

does the writer either here or elsewhere entitle the husband to the rents which may have accrued after the coverture or after the expiration of his tenancy by the curtesy. The right of the husband is stated in the same qualified and limited manner in *Viner*. " If a feme having a rent for life takes baron, the baron shall have the arrearages of rent incurred *during the coverture.*" *Viner*, tit. *Baron and feme, H. pl.* 1. " If a feme leases for years, rendering rent, and after, takes husband and dies, the baron shall have the arrearages incurred during the coverture. *Ibid. pl.* 4. And in *Comyn's*, " arrearages of rent service, charge or seck, which incur *during the coverture*, the husband shall have if he survive." *Com. dig. tit. Baron & feme, E.* 3. *Lord Coke* says, " Chattels real consisting merely in action, the husband shall not have by the intermarriage, unless he recovereth them in the life of the wife, albeit he survives his wife, as a writ of right of ward, a *valore maritagii*, a forfeiture of marriage or the like, whereunto the wife was entitled before marriage. Chattels real of a mixed nature, that is to say, partly in possession and partly in action, *which happen during the coverture*, the husband shall have by the intermarriage if he survive his wife, albeit he reduceth them not into possession in her life time, but if the wife survive him, she shall have them." The example he puts for illustration is, a rent ; and as may be noticed, a rent accruing during the marriage. " As if the husband be seized of rent service, charge or seck, in right of his wife, the rent become due during the coverture, the wife dieth, the husband shall have the arrearages ; but if the wife survive the husband she shall have them and not the executors of the husband." *Co. Lit.* 351, *a.* In another place, Coke says " A man seized of rent in fee hath issue a daughter who is married and hath issue and dieth seized, the wife before the rent became due dieth, she has had but a seizin in law, and yet he shall be tenant by the curtesy." *Co. Lit.* 29, *a.* Here it is to be observed, the interest, which according to the opinion of the commentator, the husband takes in the rent, is not absolute and entire, but as tenant by the curtesy only, and of consequence ceasing at his death. In *De Grey* v. *Richardson and others*, 3 *Alk.* 469, lands on which there were leases for years existing and rent incurred, descended on a married woman as tenant in tail. She lived four months

after farther rent became due, but made no entry nor did she or any person for her, receive any rents, and she died leaving issue. The husband insisted that he was entitled, *as tenant by the curtesy,* to the possession of the estate, and therefore prayed by his bill to be let into possession and to receive the rents *for his life.* Lord Chancellor Hardwicke decreed "that the husband, Pamplin Richardson was entitled to be *tenant by the curtesy* of all such lands as descended to his late wife in tail whereof any leases for years were existing at the time the lands descended on her and which continued till her death."

I do not find then any ground to believe that the rents which accrued under the lease now in question after the decease of John Scott, belonged to his representatives; and am therefore of opinion the demurrer on this point cannot be sustained.

The other cause of demurrer is, that if any rents have accrued to the plaintiffs, they are for a part only and not the whole of the period demanded, or in other words, that the claim of the plaintiffs as exhibited in the declaration, is more comprehensive than their right.

The private act of the legislature set forth in the declaration which was intended to vest the estate and interest of the heirs and descendants of John Budd and Sarah, his wife, afterwards Sarah Scott, in the Budd or Dutch Valley tract, including the premises for which these rents are said to have accrued, in William S. Pennington as a trustee for certain purposes, was passed on the 27th day of December 1823. In consequence of the decease of Judge Pennington, another private act was passed whereby " all the right, title, estate and interest of him and his heirs " in the tract, were vested in the plaintiffs in this cause and to the same uses, trusts, and purposes as are set forth in the first mentioned act.

The demand of the plaintiffs is for the rents for sixteen years ending on the first day of November 1829, including therein the rents of several years antecedent to the act of 1823.

The force and operation of that act are thus made the question. The defendant insists, the act is to be construed in the same manner as a grant or deed between individuals, and the plaintiffs are therefore entitled to no rent accruing before the passing of the act. The plaintiffs insist they are entitled to the rents for the whole period comprehended in their claim.

The general rule has not been controverted that the grantee or assignee of a reversion, to which rent is incident, cannot recover rent which has accrued prior to the transfer of the reversion to him. Nor is it disputed that the legislature might, if they thought proper, authorize the trustee to recover such antecedent rents. The construction of the act, then, is the proper enquiry. The enacting clause vests in William S. Pennington, his heirs and assigns, the Budd or Dutch Valley tract supposed to contain 1680 acres more or less, "together with the remainder or remainders, reversion or reversions, rents, issues and profits thereof." These words are of ordinary use in the conveyance of land, and there seems no just reason or proper claim for a broader meaning or more comprehensive action when introduced here. As ordinarily used, they convey no right to antecedent rents, and should not therefore here, unless there is something in the context or the nature or intent of the trust to require it. The section farther authorizes William S. Pennington "to sell and convey the said premises and if necessary to demand and sue for the same, and the rents, issues and profits in his own name and as though the said William S. Pennington was entitled to the same in fee simple, and to apply and dispose of the moneys arising on said sales and the rents, issues and profits of the said premises." There is nothing in the ordinary acceptation of these terms which may not be satisfied by the rents accruing subsequent to the act, and the introduction of them may very probably have been to remove any doubt which might be anticipated from a mere transfer of the premises and the conferring of power to sue therefor. The nature or intent of the trust, and the motives for passing the act are set forth in a preamble in which there is more to repel than sustain the construction the plaintiffs claim for the enacting clause. The preamble recites that Budd and his wife were seized in fee of the tract of land, that by divers descents, devises and conveyances it became vested in the heirs and descendants of them or one or both of them, that the said heirs and descendants as far as in their power had conveyed to William S. Pennington, their respective rights, titles, and interest in and to the tract, "in trust to dispose of the same for their mutual

Condit *v.* Neighbor.

benefit," that by reason of the numerous heirs and descendants being dispersed in divers parts of the United States and elsewhere, who derive their title from several distinct branches of the said family, doubts existed as to the rights of the said William S. Pennington and his power to sell and dispose of the said land so as to make a complete title to purchasers thereof, whereby the said William S. Pennington had not been able to execute the trust reposed in him, for remedy whereof it was enacted. The great purpose of the trust seems to have been "to sell and dispose of the land," nor does it appear that any difficulty had occurred in the collection of the antecedent rents, nor indeed that they had not been collected. But to enable him to sell and dispose of the land and to remove the difficulties which stood in the way of that object, the act was made; and inasmuch as rents might accrue in the mean time and before a sale was effected, they authorized him to do, what without such express authority might perhaps have been doubted, to collect the rents and apply them with the amount of sales. In the preamble, the collection of rents of any description is not mentioned. And if the wish of the parties interested, and the design of the legislature had been to give a retrospective aspect to the power of the trustee, we should not, it may be safely believed, be unable to find any allusion, more or less direct and explicit, to the antecedent rents. The just construction of all parts of the act thus appears to me to be that no express power to collect the antecedent rents was given to the trustee, and he therefore possessed no such power, if not imparted by vesting in him the reversionary estate.

This construction of the first act, it was suggested on the argument, might raise a question whether the present plaintiffs can claim rent prior to the date of the act which constitutes them trustees. I foresee no such difficulty, because they are authorized "to do and perform all such acts which might have been done by the said William S. Pennington, in the premises." And "all the right, title, estate and interest of the said William S. Pennington and of his heirs" in the premises mentioned in the act were thereby vested in the plaintiffs "in as full and ample a manner as the same vested in the same William S. Pennington, in his life time."

But the plaintiffs' counsel contend, that if they have claimed in the declaration, more than they are entitled to recover, the proper bounds to the recovery will be set on the trial, by the evidence, and that as they have a right to some portion of the rents, the demurrer cannot be sustained. Where the demand exceeds the right, but the fact of excess does not appear by the declaration, there can be no demurrer on this account. But where it is apparent that the plaintiff claims or demands more than his right, there may be a demurrer although some portion of the claim as made, is rightful ; for in such case, the rule of good sense as well as of good pleading, is brought into action, that the defendant shall not be compelled to answer or defend for that to which the plaintiff has no lawful right. 1 *Lord Raym.* 329 ; 2 *Lord Raym.* 1382; *And.* 246 ; *Carth.* 96.

Upon this point then, it appears to me that this demurrer is well taken.

CITED in *Lloyd Ex.* v. *Rowe, Spencer* 685.